IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BERNON L. HOWERY, # B12703,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 13-cv-00896-MJR |
| ) | |
| **RICK HARRINGTON,** ) | |
| **PLACEMENT COORDINATOR,** ) | |
| **SECURITY OFFICER,** ) | |
| **UNKNOWN PARTY,** ) | |
| **COUNSELOR N-1, and** ) | |
| **COUNSELOR N-2,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Plaintiff Bernon L. Howery, an inmate in Stateville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on his housing assignments, conditions of his confinement and incidents that occurred while Plaintiff was housed at Menard Correctional Center.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>   (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>   (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

On March 20, 2013, upon returning to Menard after a brief stay at Stateville, Plaintiff was housed in the N-1 cellhouse, which is where prison workers are housed. Although he is not a worker, he was still allowed to enjoy the many (unspecified) privileges afforded to the workers in N-1. However, on April 2, 2013, Plaintiff was moved to a single-man cell in cellhouse N-2, a segregation unit where the "worst of the worst" are housed. Plaintiff describes the conditions in N-2 as being "markedly different" from N-1. An unidentified officer just appeared, placed Plaintiff in "segregation cuffs," and walked Plaintiff to N-2—"harassing" him

on the way and acting "rude, uncouth and hateful." Plaintiff was not told why he was being moved, and subsequent inquiries to his counselor(s) have gone unanswered.

On April 11, 2013, Plaintiff was taken to the N-2 medical unit for treatment. He was "harshly cursed and chastised" by an unidentified sergeant for not wearing the proper clothing. Then, Plaintiff was left for two or three hours waiting to be seen. During his wait, Plaintiff's hands were cuffed behind his back and chained to the floor; and all the while he had to face a "degrading sign on the wall" that stated "Look … Fool" and had an "angry face glaring back." While in the health care office, passing officers referred to Plaintiff as an "M'fer."

Plaintiff characterizes his unwarranted transfer to segregation and treatment as cruel and unusual punishment. He admits that he does not know the names or identities of those who were responsible for the decision to move him, nor does he know the names of the officers and counselors mentioned above. Plaintiff asserts that Defendants Warden Harrington, the Chief Security Officer, Placement Coordinator, N-1 and N-2 counselors and attending officers had to have known of and approved or condoned the move.

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into three counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1: The Defendants violated Plaintiff's Fourteenth Amendment right to due process when they moved him to a segregation cellhouse without cause;**
>
> **Count 2: The Defendants subjected Plaintiff to conditions of confinement in the N-2 segregation cellhouse that constituted cruel and unusual punishment in violation of the Eighth Amendment; and**

**Count 3:  The Defendants treatment of Plaintiff and their interaction with Plaintiff constituted cruel and unusual punishment in violation of the Eighth Amendment.**

**Discussion**

**Personal Involvement**

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).  As a result, the doctrine of *respondeat superior* does not apply to actions filed under 42 U.S.C. § 1983.  *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).  However, "[s]upervisory liability will be found … if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it."  *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001).  *See also Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002) (allegations that an agency's senior officials were personally responsible for creating the policies, practices and customs that caused the constitutional deprivations suffice to demonstrate personal involvement).

The only personal involvement described in the narrative of the complaint is by unidentified correctional officers and counselors, not the supervisory defendants, Warden Harrington, the Chief Security Officer, and the Placement Coordinator.  Although discovery could lead to information that would substantiate Plaintiff's admittedly baseless assertions relative to these three supervisory officials, and he could learn the names of the correctional officers and counselors involved, the Court need not delve further into the logistics of such discovery because the complaint fails to state a colorable constitutional claim.

**Counts 1 and 2**

Counts 1 and 2 pertain to Plaintiff's transfer to segregation without cause, and the conditions in the segregation cellhouse, which were "markedly different" from what Plaintiff had experienced in cellhouse N-1. The Eighth Amendment prohibits cruel and unusual punishment. As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.* (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg,* 428 U.S. at 183. However, not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation and physical safety. *Rhodes,* 452 U.S. at 346; *see also James v. Milwaukee County,* 956 F.2d 696, 699 (7th Cir.1992). Prisoners cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988). Plaintiff has no right to the amenities he had enjoyed in N-1. More to the point, the complaint does not describe or intimate that any basic human need was being deprived. Therefore, in terms of the conditions of confinement, no plausible Eighth Amendment claim has been stated in Count 2.

The fact that the complaint offers only a relative assertion that the conditions in cellhouse N-2 were worse than in N-1 also dooms Count 1, the due process claim. When a plaintiff brings an action under Section 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch,* 494 U.S. 113, 125 (1990). Liberty interests arise only from prison policies that impose "atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life." *Wilkinson v. Austin,* 545 U.S. 209, 221–23 (2005); *Sandin v. Conner,* 515 U.S. 472, 484 (1995). Furthermore, segregation does not implicate a liberty interest unless the length of confinement is substantial *and* the "record reveals that the conditions of the confinement are unusually harsh." *Marion v. Columbia Corr. Inst.,* 559 F.3d 693, 697–98 (7th Cir.2009). Segregation for four months does not automatically trigger protection. *See Lekas v. Briley,* 405 F.3d 602 (7th Cir.2005) ( *citing Whitford v. Boglino,* 63 F.3d 527, 533 (7th Cir.1995) (six months is not so extreme a length of time to trigger due process protection)). Therefore, Plaintiff has failed to state a colorable due process claim and Count 1 must be dismissed.

**Count 3**

Count 3 is premised upon the assortment of allegations that correctional officers were "rude, uncouth and hateful," and the rough treatment Plaintiff received since his transfer to N-2. Mere name-calling and rude, boorish behavior does not violate the Eighth Amendment. *See, e.g., McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993). The rough treatment and behind-the-back restraints, as described in the complaint, also fail to rise to the level of a constitutional violation. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action .... [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' ' *Hudson v. McMillian,* 503 U.S. 1, 9-10 (1992); *see also Outlaw v. Newkirk,* 259 F.3d 833, 837-38 (7th Cir. 2001). All of Plaintiff's claims are of a *de minimus* nature; thus, Count 3 must be dismissed.

**Pending Motions**

**Recruitment of Counsel**

Plaintiff moves for the recruitment of counsel (Doc. 3). There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc*., 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007)). "The question ... is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Id.* at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id.*

The Court will assume that Plaintiff is financially unable to retain counsel. However, Plaintiff has made on attempt to secure counsel on his own. Plaintiff indicates that he has not attempted to secure counsel because he is too busy with his efforts to upset his criminal conviction. Plaintiff has an associate's degree and his complaint demonstrates that he is capable of proceeding without an attorney. His claims failed because they were not egregious enough to violate the constitution and/or for lack of sufficient detail to show plausibility, not because Plaintiff lacked legal skills. The sort of claims Plaintiff wants to pursue are not complex and lend themselves to a simplistic narrative explanation of events and conditions. If Plaintiff can draft an amended complaint that states a viable claim, if he still does not know the identities of

there are ways to solve those problems. Therefore, Plaintiff's motion for recruitment of counsel (Doc. 3) will be denied. The Court will remain open to appointing counsel if the circumstances change.

**Service of Process**

Also before the Court is Plaintiff's motion for service of summons and the complaint at government expense (Doc. 4). Because the complaint cannot proceed, the motion (Doc. 4) will be denied as moot.

**Disposition**

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff's motion for recruitment of counsel (Doc. 3) is **DENIED without prejudice**; and Plaintiff's motion for service of summons and the complaint at government expense (Doc. 4) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that **COUNTS 1, 2** and **3** fail to state a claim upon which relief can be granted, and thus are **DISMISSED without prejudice** and with leave to amend.

**IT IS FURTHER ORDERED** that, on or before **October 24, 2013**, Plaintiff shall file an amended complaint, signed by each named plaintiff. Plaintiff is **ADVISED** that if he fails to file an amended complaint by the prescribed deadline and in strict compliance with this Order, this action will be closed pursuant to Federal Rule of Civil Procedure 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994).

Plaintiff is **ADVISED** that, because his obligation to pay the $350.00 filing fee for this action was incurred at the time the action was filed, *if* he elects not to proceed with this action, he still must pay the filing fee.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  September 24, 2013**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**